Mr. Kingsley. Thank you, Your Honor. May it please the Court. My name is Eric Kingsley. I represent the appellant in this case. And I think there are two issues that I would want the Court to focus on in making the ruling in this case. And the first is a very discreet issue, which is one of the claims that the plaintiff has certified, which is the tray washing claim or the homework claim, as it's referred to in the briefs. And the other is the decision of the District Court to deny reopening discovery to allow the plaintiff to depose the defendant's declarance. So I first want to start with the tray washing claim. But to give the Court a little bit of context, this issue was brought up by defense. There were seven basic claims that were brought. Three of those claims dealt with failure to pay wages. And they dealt with pre-shift work, post-shift work, and this homework claim where they had to bring these trays where the grapes are placed in the field home to wash them. And they weren't paid for that. There were four other sort of subclass claims that are described in the briefing, which were for tools, reporting time, pay, meal breaks, and rest breaks. And the judge's order was just plain wrong on the facts as it relates to the homework or tray washing claim because the judge in the case indicated that the defendant's declarations indicated that the proposed class members did not have to bring the trays home when, in fact, there was absolutely no evidence in the record that the defendant submitted in their 33 declarations that indicated such a thing. It was silent on the issue. Let me ask you a question, Counselor. You jump right to that particular issue. Did you ever ask the district court to certify a subclass regarding that issue? That was the argument that the defendant brought up. We had asked the court to certify a claim for wages, for unpaid wages. And I guess that, as I indicated, had three components to it, pre-shift work, post-shift work, and the tray washing or the homework claim. So while we didn't necessarily ask specifically as to that sort of subset of the wage claim, it certainly was implied within the evidence submitted that there were three claims that composed the wages. I'm having a little trouble if I were the district court divining that. That's the difficulty. In other words, I hear what you're saying, but if I were the district court and you asked me to certify a subclass or to look at a subclass related to the wage claim, which in a way seems like to be the whole claim, I don't know how I would really divine that what you're really asking me for is to take home and watch the BIM claim. So is there something in the argument or the briefing that would alert the district judge to that point? Well, other than what I indicated is that we asked for a claim to be certified for unpaid wages. And without having the benefit of oral argument, the ruling came down. And I think what the judge determined, and perhaps rightly so, is that there was just a lot of muddled record in the district court's mind. And there's no way that we could certify this thing as a class. And so the baby got thrown out with the bathwater. And I think what the district court should have done is taken each theory of liability that was clearly delineated in the papers and said, well, can this claim be certified? Can number two get certified? Can number three get certified? And so forth. I guess I don't understand that. I mean, if you haven't asked the district judge for certifying a class or a subclass on a particular basis, what authority do you have that would oblige the district court, in effect, to respond to up and certify a subclass? I think that the authority is that the system is nimble and such. And so that if there's a certain – if a claim sort of composes two elements and one part of it can't be certified and one could, that the court should sort of use its discretion to make a determination as to that this claim does pass muster and perhaps the other claim doesn't pass muster. But, Counselor, you knew how to request partial certification on other issues, but you didn't make it on this issue. And you're suggesting that then the district court is supposed to just jump up and do it for you when you did it on other issues but not this? Is that what you're telling me? I guess that's what I'm telling you. I'm telling you that – You're telling me that because you raised it other places doesn't mean you knew how to raise it here and so, therefore, the court should have done it for you? Well, the reason why that, I guess, it was raised in other places is because they were different claims. And perhaps it should have been made more forcefully clear, but in this particular issue, it was all a claim for wages, but there were three different theories of liability in the claim for wages, being it pre, post, and homework, whereas the other four subclasses dealt with discrete, different labor code sections that sought to be certified. And so perhaps it was inartfully plied and argued, but the basic premise was there that there were seven different theories of liability. Three of them, I guess, were combined within this claim for wages, but then the question is if they were clearly different theories of liability, that in and of itself, I think, is sufficient to say that the court should analyze each of those seven issues separately in a determination for class certification. Do you have any kind of case that suggests that analysis? I don't, Your Honor. See, I'm just, you know, the one thing is sort of going back to the old principles of, you know, the specific governs over the general. So when you ask to certify these subclasses, and then your other one is, and also please certify all agricultural workers who are not paid all lawful wages, it just seems that you're asking a lot of the district court to somehow go through and say, well, I'm going through now all the claims and the theories, and I'm going to pull out one of these as a subclass. But I guess the issue is whether or not the court, if he had gotten the factual record correct, wouldn't have done that on his own. So whoever wins. Maybe it's just the opposite. Maybe it's irrelevant whether he got the factual record right or not, and because, in effect, you didn't tell him what you reasonably wanted to certify. So whether he misstated the record on that point or not is irrelevant, since you didn't give him the subclass to certify, and therefore he didn't have to focus in on that particular issue. That's certainly a reasonable interpretation. I guess that. Well, and what's my standard? Well, the standard would be abusive discretion. That's my worry. Right. I understand that. Did you go back on a motion reconsideration on this? We did not, Your Honor, no. See, that's the other thing that I know you're not required to do that, but it seems odd that we'd be taking all the time to come all the way to the Ninth Circuit without just saying to the district judge, you know, with all due respect, you missed it, and the facts are this, and actually there's this little subclass hanging out there. So that is a little troublesome to me that he's operating or the district judge is operating in a vacuum here. And now you're asking the Ninth Circuit to say, well, basically you abused your discretion because you weren't clairvoyant. So that's where I'm having some trouble of why you wouldn't have gone for a motion for reconsideration. Well, I guess the decision was made perhaps that the judge was very hostile to our side potentially and that a reconsideration motion wouldn't be helpful, but perhaps that was an error in judgment on our side to have not done that. Never know till you ask. That is true. And I guess the second issue, though, if I may, is the question is whether or not discovery should be reopened to have allowed us to take the depositions of these other folks. Let me ask you a question on that. Didn't the district judge give you an opportunity to show that there had been some misconduct or some coercion? He did, but I don't know if that necessarily really helps us any. It isn't the issue because let me just take you through the timeline. The class certification motion was filed in March of 2008, March 12th. The declarations that the defendants submitted were signed on April 14th of 2008 and their opposition was filed on April 15th, 2008. So one day before their opposition was due, they had all these declarations signed and submitted them, and then plaintiff's reply was due on April 25th, 10 days later. So literally discovery had closed. There was absolutely no opportunity for the plaintiff to be able to take the depositions of at least a portion of these declarations the defendants submitted. And so the defendant, in essence, lied in the weeds and at the end put forth all this evidence. Now, in a securities-type case or in a case in an employment context where there's a policy violation, such as like a handbook says something that's erroneous to the law, it's very easy for a district court to look at the evidence and say, well, clearly there's a violation here and we should certify a class. In a practice case where the policy is legal but the practice that the plaintiff alleges didn't necessarily conform to the law, it's much more difficult because all the defendant really has to do is muddle the record in one thing. Here's the thing. I mean, Sanchez recanted to an extent. Well, she did recant her original declaration. But what she didn't do was to say she did it because of anything that the defendants did that was untoward. She just changed it. So the district judge then says, well, if you want to reopen discovery as to all of the declarants, you better show me something that indicates contrary to the declarations put in by Sun Pacific's counsel and human resources person that there was some kind of coercion or some kind of misconduct involved. Well, why does there have to necessarily be misconduct or coercion? Well, I don't know. Sanchez just changed her mind. I mean, it can happen. So what does that show? Why does that entitle you to then go and make a discovery of all the other declarants to see if they changed their minds too? Well, not necessarily change their mind. People talk to them and ask them that. I mean, there's nothing to keep you from going to the other 30 and saying, you know, do you still think the way you thought before? Can I get a declaration from you saying the opposite? We had only 10 days, and it was kind of difficult to try to round everybody up. You could have done. I guess we tried, and we got one out of 33. Well, I guess the real – well, if you've answered my colleague's question first, then I'll ask you this. Okay, no problem. Did you answer her question? I'm not sure if I did or not. I guess the question is from a public policy perspective, whether or not in a practice-type case we can allow the plaintiff to go first, submit the evidence, and then the defendant can come up with whatever. I mean, we don't even know – I'm not suggesting that there's coercion or impropriety here, but we don't know if these declarations actually exist. We don't know if what they said was true. We don't know whether or not perhaps the practice varied over time. There's all these unanswered questions. The whole system of justice is based on cross-examinations, Perry Mason and, you know, getting people up on a stand and making a determination of whether or not the evidence can test the veracity. So we didn't get to go up to bat. You know, the World Series is tonight. We want to get up to bat here. We might strike out, but shouldn't we get a chance to go up to bat and see if this evidence actually is as they say it is, or do we just trust them? It makes me think of President Reagan. He had a saying. He always said, trust but verify. But we never got to verify. I guess my question is, on an abuse of discretion, which is again where we are on discovery, and with the district court saying he was basing his lack of commonality on the existence of contradictory depositions, and then even with the one who said she was changing her mind, he didn't find any coercion or anything that would explain that she was changing his mind for an improper purpose. How do I say it's an abuse of discretion when we're just talking about commonality of whether we have a class action to allow discovery? Well, I think that goes to the public policy of whether or not a plaintiff ever gets those. Well, public policy would suggest that there's an abuse of discretion? No, in other words, from a procedural standpoint, how these class actions are done, does the plaintiff ever get an opportunity to test the defendant's evidence? I think that's the issue. And so if the judge set up a procedure where the plaintiff never gets the opportunity to test the defendant's evidence, how can that be fair? How can that not be an abuse of discretion when we never have the right to cross-examine? We're encouraging defendants basically to not necessarily concoct but get favorable testimony that's written in a certain way in a declaration, and you never get cross-examination to be able to test whether or not the person actually meant what that is. And we're talking about here illiterate seasonal workers who are not very sophisticated and technical legal terms probably aren't, you know, very familiar to them. And they could have said, oh, yeah, yeah, sure, that's fine, and then just sign on the line. How do we test that? And so I think this is a bigger issue than just this case, but how briefing works in class certification motions. Well, you're also not out of luck in terms or out of court, because apart from whether you have individual claims, the district court always, you know, has the authority to revisit this as things develop, as you get discovery in the context of your case. And I think here, if I'm correct, the district court actually made that point that, you know, there will be more opportunities as the facts develop to really see if there's a class. And it seems to me particularly on your class with, you know, the bucket washing issue, if it's as discreet as you describe it, that that would be a prime kind of a thing to bring back before the district court. And, I mean, do you disagree? Is there anything in your mind that would preclude you from taking the newly developed facts or different take on the evidence and going back to the court and asking again? You know, I guess I'm not familiar whether or not I didn't look at this issue, but whether it would be a collateral estoppel is that issue. But to the extent that there's none, I know under state court rules there would be. Well, what was the collateral estoppel? You're within the same court. Yeah, there's no collateral estoppel, and you're in the same case in a non-dispositive. I mean, in the class certification context, of course, it's a non-dispositive. Even findings are not dispositive necessarily. So it seems to me you're not, nothing is precluded, and basically you have a pretty open table to go back to the buffet here and see if you can get a partial or significant class certification as things develop. My time has expired, so thank you. Thank you. Thank you, Mr. Kingsley. Good morning. I'm Rob Carroll. I'm from the Nixon Peabody, and with me at council table this morning, Your Honors, is my colleague Dale Hudson, and we represent Sun Pacific. Mr. Carroll, the district court did get the cray-washing bin wrong. I mean, it did. Well, as we said in our briefs, and I know you've read them, those exact words, we've been through all of our declarations. Again, we can't find those exact words, but what we find, Your Honor, is Abelino Sanchez, who is at ER 297, paragraph 7, says, I have always been paid for every minute I have worked. I have never been pressured. Another gentleman, Gerardo Valenzuela, says, I've never been pressured to work after the end time. And it goes on and on. I've got a little chart. Your position is that even though the district court made a mistake in saying that the declarations directly dealt with the take-home-the-praise issue, that nevertheless the fact that at least your declarants were paid full wages for the work that they did covers it. In other words, what I'm saying is we want it to be totally accurate in the briefing, and those exact words are not in any of the declarations. What I'm saying is implicit. I mean, the gentleman that we're assisting, Judge O'Neill, and going through that six-, seven-hundred-page record, mountains of exhibits, you name it, and doing the rigorous analysis that Judge O'Neill obviously did to get to where he denied the motion, they could have fairly derived an inference or at least implied in many of these declarations that that did not occur. That's what I would say about that. So if there's error there, it's obviously harmless, but I think if you give a fair reading to lots and lots of those declarations, I'm paid for all the time I work, anyone who says that we work for free is not telling the truth. We've never worked for free, never heard of anyone being asked to do work and not be paid. Just go through the declarations. I have a little chart. Maybe we could even make an exhibit for the deliberations. But I think that it's maybe a distinction without a difference, the way the judge summarized that little part of this humongous record. Also, I just wanted to say with regard to this case to me is all about the standard of review. And most importantly, I want to go directly to the cases that the judgment was asking about, that established that there is no abuse of discretion when the district court fails to certify a subclass. That's not requested by the plaintiff. We've cited to you the Lozano case, which is my circuit just last two years ago. District court did not err in failing to consider whether Lozano could bring his claims as part of a California subclass because Lozano never requested it. In the Hawkins case, the district court is not to bear the burden of constructing subclasses or otherwise correcting Rule 23A problems. He has a mountain of evidence that he's sifting through. I mean, his opinion is very carefully crafted, and he's done that close and precise and rigorous analysis. It's obvious. And the burden, the Hawkins court goes on to say, is on the plaintiff to submit proposals to the court, to give him some notice, to let him know. Beyond Lozano, there are other circuit courts, the Second Circuit, in this Lundquist case where the proposed subclass was not presented to district court, and they went off and said, We also recognize that the court is empowered under Rule 23C-4 to carve out that appropriate class, including constructing subclasses. However, the court is not obligated to implement it on its own initiative. Thus, the district court's refusal to shoulder what, in the final analysis, is plaintiff's burden cannot be regarded in this case as an abuse of discretion, and on and on the Supreme Court case as well. That's to Judge McKinney's question about, is there a case? There's not a case, and I appreciate Mr. Kingsley's candor. There are statutes in cases and reasons and evidence that help define the abuse of discretion standard here, which should be applicable. To me, if you look at the results, the final product of this meticulous analysis, it's clear that there is no, he's well demonstrated there's not commonality here. There's not typicality. And he also gets to an observation, almost a finding at the end, that having failed to demonstrate commonality, he says, under the more permissive standard of Rule 23A, it would be impossible, he says, to do so under the heightened standard of Rule 23B. And it's not a finding, but to me it's presaging kind of how he would look at any other errors or misstatements, et cetera, if they were remanded, in my view anyway. You would agree with me, Counsel, that the district court's opinion as to lack of commonality really rested on the existence of contradictory depositions? Without any question, Your Honor, it's my own statement. Would you then give me the fact pattern as to this discovery, reopen of discovery? I mean, what are the facts here? The facts are, as Counsel has suggested, that they put together these, if you will, affidavits, that they put together these statements, and then immediately you come in with other statements. And then the district court, even though the material is just there, and you've got one that's already changing your mind, that the district court really abused its discretion by not allowing them to go out and see if really what you had was worthwhile. What is the factual background for that? Well, the factual procedural background, sir, is that discovery cutoff had already occurred. The factual procedural background is that the state... How long have you had for factual? One year, Your Honor, and discovery had been cut off, and we have a discovery order. I was reviewing for today. I was reminded that that piece of paper that we get is not a little frivolous piece of paper. That's something that we have to adhere to. So the discovery cutoff was gone? Yes, sir. In other words, a point where you were submitting statements by others  Exactly, Your Honor. And the district court did allow some discovery, at least of the one particular claimant? That is correct. And apparently, as Judge Reimer said, there was some recantation, if you will, and there was no coercion ever demonstrated. How would you, you know, as a practical matter, it's a little frivolous because as counsel points out, this is a situation where your client has a legal policy. It's not an illegal policy. They say, you work, we pay. I mean, that's basically... Correct. And that's consistent with the wage and hour. But if you spin that out with what the district judge did, basically the district judge says, as long as there's conflicting evidence in effect, then I'm not going to certify the class. If that were the case, of course, every employer obviously comes up and says, we pay for everything that people do. You could never get a class certified. And so their point is at least we need to get under those declarations. Otherwise, we're going to always be out of court as soon as you put in one declaration that conflicts or contradicts what our workers say. But that's in the context of the certification motion. There was plenty of time to go out and take declarations. I mean, they submitted them in the process of bringing that motion. But there was many months in there where they could have been out talking with people, taking statements as we did. I think the other part is not a mere conflict. I mean, there's this, what I refer to as the thorny thicket, all this evidence and conflicting evidence. But it really kind of points out the difference, if you will, between trying to get a labor or an employment law class certified versus, say, a product liability case where the rear lift gate doesn't work. And so it all comes from that one fact that you've got a national class action with thousands of people that had that same problem. Here, you've got a seasonal agricultural operation with far-flung fields, 30 different crews, 10,000 people at one point or other occupying 80 to 120 people. You've got a policy, but you also have on-the-spot supervision. You've got a field in Porterville. You've got another field in Seven Standard just north of Bakersfield. There's 40, 50 miles between these fields. So I think what he's doing is looking at the reality of 10,000 mini-trials, if you think about it, ultimately, parsing through that evidence. It's just not about the two declarations conflicting, but it's about the pragmatic, that realistic assessment that the Supreme Court and in the Lucky Stores case, this circuit, wants the district court to be doing in managing what's going on in her or his courtroom. So I think that's how I would respond to that. If I could also say with regard to this one more point about the reopening, the request to reopen or that that was some kind of error, there was no showing at all that there was any good cause. There was ample time. I think it's just Mr. Kingsley and I are friends away from the podium, and I know he's just using his usual flowery language. He talks about us lying in the weeds, and I'm sure he didn't mean to talk about the farm workers, at least that I interviewed, as being illiterate. But the point is here that there was ample time, and had there been any cause, Judge O'Neill asked for that cause, and it didn't come. In fact, just the same declaration came back. So I think that's a red herring as well. I've got about four minutes left. Are there any other questions of the panel? I don't think we have any other questions. All right. Well, thank you very much for your time this morning. Thank you, Mr. Carroll. Again, thank you, Mr. Kingsley, for the matters that you submitted in our next year argument in Perry against campaign's California families.
judges: Rymer, McKeown, Smith M.